IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

PAUL CARDEW FANNING,

        Petitioner,

v.

DON MILLS, Superintendent, Two
Rivers Correctional
Institution,

        Respondent.

CV. 08-558-KI

OPINION AND ORDER

KENDRA M. MATTHEWS
RANSOM BLACKMAN LLP
1400 Congress Center
1001 S.W. Fifth Avenue
Portland, OR 97204-1144

    Attorneys for Petitioner

JOHN R. KROGER
Attorney General
SUMMER R. GLEASON
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

    Attorneys for Respondent

1 - OPINION AND ORDER

KING, Judge

Petitioner Paul Cardew Fanning, an inmate at Two Rivers Correctional Institution, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied, and this proceeding is dismissed.

## BACKGROUND

On February 6, 2001, petitioner was indicted on two counts of Sexual Abuse in the First Degree and two counts of Attempted Sodomy in the Second Degree in Case No. C010282CR. In that case, the charges alleged that on December 21, 2000, petitioner subjected the victim "R.V.," a boy under the age of 14, to sexual contact.

On April 6, 2001, petitioner was indicted on eight counts of Sodomy in the Second Degree and four counts of Sexual Abuse in the First Degree in Case No. C010935CR. In that case, the charges alleged that petitioner sexually abused the victim "R.J.," a boy under the age of 14, on four separate occasions.

The cases were consolidated for trial, and the jury heard evidence over several days in February 2002. R.V., who was 13 years old at the time of trial, testified that he met petitioner through the Salvation Army Adventure Corp. R.V. testified that he and his younger brother had become friends with petitioner and that petitioner frequently took them out to eat, to the movies, purchased them gifts, and that they often spent the night at petitioner's home. R.V. testified that when he and his brother

2 - OPINION AND ORDER

spent the night at petitioner's home, he and his brother slept on couches and petitioner slept on the floor of the living room. R.V. testified that on December 21, 2000, he and his brother J.V. spent the night at petitioner's home. R.V. stated that the three of them played a game and then watched a movie. R.V. fell asleep on a couch during the movie.

R.V. testified that he was awakened during the night by a naked petitioner who grabbed R.V.'s hand and put it on petitioner's erect penis and moved it around. (Tr. Vol. 2, p. 93-95.) R.V. stated that petitioner then asked R.V. if petitioner could put R.V.'s penis in petitioner's mouth so petitioner could "suck the sperm out of it." (Id. at 96, 106.) R.V. also testified that petitioner said "I did the same thing to Richard." (Id. at 106.) R.V. testified that petitioner attempted to unbutton his pants, but that he did not permit petitioner to do so. R.V. stated that petitioner tried to get on top of him, and he hit petitioner. R.V. said that petitioner hit him back, then R.V. fled to the bathroom. R.V. said he later returned to the living and laid with his sleeping brother for the remainder of the night. (Id. at 101, 103.) R.V. testified that the following morning he was upset when petitioner returned him and his bother to their home. R.V. testified that he told his mother about petitioner's actions later that day. (Id. at 110.)

R.V.'s mother, Ellen Tellez, testified and confirmed petitioner gave her sons gifts, took them out to eat, and they frequently spent the night at petitioner's home. Tellez testified that R.V. appeared upset the morning following the December sleepover at petitioner's home and that some time later, R.V. told her that petitioner tried to make him have sex. (Tr. Vol. 2, p. 54-55.)

Several other witnesses testified concerning the victim R.V., including several investigating officers and Michael Lukschu, M.D., the physician who evaluated R.V. at the Child Abuse Response and Evaluation (CARES) program at Emanuel Hospital in Portland, Oregon. Dr. Lukschu made a diagnosis of abuse. (Tr. Vol. 3, p. 122.)

R.J., an Alaska resident, who was 14 years old at the time of the trial, testified that he met petitioner through the Salvation Army Adventure Corp. when petitioner was working in Alaska. (Id. at 59-60.) R.J. stated that he and petitioner became friends, and that petitioner would take him out to the movies, out to eat and that he often spent the night at petitioner's home. R.J. testified that when he slept over at petitioner's house, he would sleep on the couch, and petitioner would sleep on the floor.

R.J. testified that on many occasions in Alaska, when R.J. spent the night at petitioner's house, he would be awakened by petitioner placing his hand on his penis underneath his clothing. (Id. at 68.) R.J. also stated that there were numerous times when

4 - OPINION AND ORDER

petitioner performed oral sex on R.J. and that at least one time, petitioner had anal sex with R.J. while in Alaska. (Id. at 68-70.)

R.J. testified that on at least four occasions when he visited petitioner in Oregon during spring break in Oregon in March 2000, petitioner touched his penis and performed oral sex on him in the same manner as that occurring in Alaska. (Id. at 82-86.)  R.J. also testified that during spring break, petitioner had anal sex with R.J. one time.  R.J. testified that he didn't tell anyone about the abuse sooner because he was embarrassed, and did not want to get in trouble. (Id. at 88-89.)

At trial, petitioner's counsel called five character witnesses who lived in R.V.'s neighborhood.  The witnesses testified that R.V. and Tellez were known not to be truthful. (Tr. Vol. 4, p. 3, 19, 21, 32, 39.)  In rebuttal, the state countered with four witnesses who testified that R.V. and Tellez had a reputation for truthfulness in the neighborhood.  (Tr. Vol. 6, p. 21-34.)

Petitioner, who was 47 at the time of trial, testified in his defense.  Petitioner stated that he had spent most of his career working with children; first with the Boy Scouts of America and then with the Salvation Army.  Petitioner worked in California until he was  transferred to Alaska in 1995 while working for the Salvation Army.  The Salvation Army transferred petitioner to Oregon in 2000.  (Tr. Vol. 4, p. 159.)  Petitioner denied all the

5 - OPINION AND ORDER

charges against R.V. and R.J. and called several witnesses to discredit the victims' version of events.

Petitioner was convicted in Case No. C010282CR (involving R.V.) and Case No. 010935CR (involving R.J.) for a combined total of six counts of Sodomy in the Second Degree, six counts of Sexual Abuse in the First Degree, and one count of Attempted Sodomy in the Second Degree. (Resp. Ex. 101.) The court imposed Measure 11 sentences totaling 150 months imprisonment.

Petitioner directly appealed his conviction challenging only his sentence. The Oregon Court of Appeals affirmed without opinion and the Supreme Court of Oregon denied review. State v. Fanning, 190 Or. App. 582, 79 P.3d 917 (2003), rev. denied, 336 Or. 509 (2004).

Petitioner filed a state post-conviction proceeding alleging nine claims of ineffective assistance of counsel. The post-conviction court denied relief. The Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. Fanning v. Hall, 215 Or.App. 500, 170 P.3d 8 (2007), rev. denied, 344 Or. 109 (2008).

## DISCUSSION

In the instant proceeding, petitioner raises two claims of ineffective assistance of counsel. In his first claim, petitioner argues that trial counsel was ineffective when she did not object to testimony from Dr. Lukschu that lying was not a problem behavior

6 - OPINION AND ORDER

for R.V., which petitioner claims amounted to an impermissible comment on the credibility of R.V. In his second claim, petitioner contends that once Dr. Lukschu testified about R.V.'s lying behavior, it opened the door to use specific instances of R.V.'s untruthful conduct when cross-examining Dr. Lukschu and the state's other character witnesses, and that counsel was ineffective when failing to do so.

Respondent moves to deny habeas corpus relief on the basis that the state court's rejection of petitioner's two claims for relief is entitled to deference.[1] I agree.

## I. **Standards**.

Under 28 U.S.C. § 2254(d), federal habeas corpus relief may not be granted on a claim that was adjudicated on the merits in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under Strickland v. Washington, to prevail on a claim of ineffective assistance of counsel, petitioner must show that (1) his counsel's performance was deficient, and (2) that the deficient

---

[1] Petitioner's claims were properly exhausted in the proceedings below.

performance prejudiced the defense. 466 U.S. 668, 687 (1984); Bell v. Cone, 535 U.S. 685, 698-99 (2002); Williams v. Taylor, 529 U.S. 362, 390 (2000). Failure to make the required showing on either prong defeats the ineffectiveness claim.

To prove deficiency of performance, petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. There is a strong presumption that the counsel's conduct falls within a wide range of reasonable professional assistance. Id. at 689. Reasonableness is determined as of the time of counsel's conduct, not in hindsight. Id. at 689-90.

To establish prejudice, petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Bell, 535 U.S. at 695; Williams, 529 U.S. at 390-91; Strickland, 466 U.S. at 687, 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Williams, 529 U.S. at 391 (quoting Strickland, 466 U.S. at 694).

Petitioner presents no new evidence in this proceeding and asserts no defect in the state post-conviction process. Accordingly, this court presumes that the state court's findings of fact are correct, unless rebutted by the petitioner with clear and convincing evidence. 28 U.S.C. §§ 2254(d)(2),(e)(1); Lambert v. Blodgett, 393 F.3d 943, 978 (9th Cir. 2004), cert. denied, 546 U.S.

8 - OPINION AND ORDER

963 (2005); Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir.), cert. denied, 543 U.S. 1038 (2004); see also DeWeaver v. Runnels, 556 F.3d 995, 1007 (9th Cir.), cert. denied, 130 S. Ct. 183 (2009). This court reviews the state court's ultimate conclusion to ascertain whether it is contrary to or an unreasonable application of Strickland. 28 U.S.C. § 2254(d)(1); Lambert, 393 F.3d at 978.

**II. Analysis.**

    **A.   Dr. Lukschu's Testimony.**

In this case, Dr. Lukshu testified that he was the physician who evaluated R.V. at CARES. Dr. Lukschu described the routine that the clinic undertakes when a child is referred to the clinic, typically following a disclosure of inappropriate touching or sexual activity. (Tr. Vol. 3, p. 116.) Dr. Lukschu explained that the clinic obtains a medical history from the family, and that there often is a report from law enforcement in the file before a physical examination of the victim is conducted. (Id. at 117.) Dr. Lukschu testified that R.V. refused a physical examination, so he conducted a verbal interview. (Id. at 120.) Based on the interview and the other information in the file, Dr. Lukschu made a diagnosis of abuse:

> Q.   . . . What types of things do you look for that are significant in assisting you in making a diagnosis or not being able to make a diagnosis?
>
> A.   Well, the things that can help me to formulate a diagnosis include lots of detail provided by the child – where the child was when this event

9 - OPINION AND ORDER

>     happened, the consistency in which they provide
>     details to different entities such as law
>     enforcement, and also the way the child actually
>     just sort of presents with their own emotions and
>     their behavior during the interview.
>
> Q.  On the evaluation that was conducted for [R.V.]
>     back on January 8, 2001, did you make a diagnosis
>     of sexual abuse?
>
> A.  Yes.
>
> Q.  In making that diagnosis, did you do so with a
>     reasonable degree of medical certainty?
>
> A.  Yes. (<u>Id.</u> at 122.)

Following cross-examination, the prosecutor asked Dr. Lukschu the following questions on re-direct examination:

> Q.  Doctor, with regard to an evaluation, as part of
>     that evaluation, are there some questions about
>     problem behaviors?  There is a list with an answer
>     of "yes" or "no" that's to be placed with them, is
>     there not?
>
> A.  Yes.
>
> Q.  One of those questions involves lying, does it not?
>
> A.  Yes.
>
> Q.  These are questions filled out by the parents or the
>     caretaker, the person who is bringing in the child?
>
> A.  Yes.
>
> Q.  How is the question involving lying answered?
>
> A.  The answer checked is "No." (<u>Id.</u> at 131-32.)

Before the post-conviction review (PCR) court, petitioner contended that Dr. Lukschu's statement was an impermissible comment

10 - OPINION AND ORDER

on R.V.'s credibility and that counsel's failure to object and impeach Dr. Lukschu with specific instances of lying rendered ineffective assistance. The post-conviction court made the following relevant findings:

> The issue around the doctor's testimony, around this question on the form, again, when I went back and I read the testimony and looked at this, and then I looked at the witnesses that were called to impeach the mother and the boy's credibility here, first of all, I have no belief that the testimony of the doctor about this question checked on the form about lying, I don't believe that that opened the door to testimony about specific acts of lying. Now, if I'm wrong, the Court of Appeals can tell me that, but I just don't think that happened, and it's not really impeaching the doctor. What it is is the doctor said the mother checked this. Mom got impeached. The kid got impeached. I just don't see it as an issue.
>
> Yeah, the testimony might have been objectionable. There may be an exception of a business record. Again, that's just a slippery piece, but it doesn't really matter. I don't think it opened the door you think it opened.
>
> Then the only other real issue, I think here is vouching for the credibility. Again, I read the transcript the same that [the state] does, that, you know, it's not a vouching for the credibility of the witnesses. (Resp. Exh. 152, p. 33-34.)

In the instant proceeding, petitioner argues that the sole purpose for Dr. Lukschu's testimony was to lend credibility to R.V.'s testimony. According to petitioner, Dr. Lukschu's diagnosis of abuse was based in part on Tellez's report that R.V. did not have a "problem with lying." Petitioner submits that the specific testimony about the "lying behavior" was objectionable because it

11 - OPINION AND ORDER

was "tantamount" to Dr. Lukschu stating that he believed R.V.'s story and that counsel was ineffective in failing to object. Petitioner's arguments fail for numerous reasons.

Initially, from a factual standpoint, petitioner has failed to present clear and convincing evidence to overcome the PCR court's conclusion that Dr. Lukschu was stating that the mother checked the box. See 28 U.S.C. §§ 2254(d)(2), (e)(1). Next, petitioner has not demonstrated that Dr. Lukschu's statement that the mother checked the box "no" was inadmissible, and thus counsel's failure to object does not fall below an objective standard of reasonableness. See United States v. Bosch, 914 F.2d 1239, 1247 (9th Cir. 1990)(counsel's failure to object to admissible evidence was not unreasonable or prejudicial).

As petitioner correctly notes, under Oregon law, a witness may not give an opinion on whether he believes another witness is telling the truth. See, e.g., State v. Middleton, 294 Or. 427, 438, 657 P.2d 1215 (1983); State v. Milbradt, 305 Or. 621, 629, 756 P.2d 620 (1988); State v. Leahy, 190 Or. App. 147, 153, 78 P.3d 132 (2003). However, the cases relied upon by petitioner are readily distinguishable.

For example, in Leahy, the court concluded in a sodomy prosecution that a witness's testimony that "I believe that it most definitely happened exactly the way the victim described it to me" was "tantamount" to a direct comment on the credibility of the

12 - OPINION AND ORDER

victim. 190 Or. App. at 153. And, in Milbradt, a case involving the sexual abuse of two women with mentally disabilities, a psychologist testified that he saw no evidence of deception, and that one of the women could not lie without being tripped up. 305 Or. at 629-30. There, the court ruled that the testimony was tantamount to an opinion on the victim's credibility. Id.

In this case, unlike Leahy, Dr. Lukschu did not testify that he personally believed R.V.'s story. And, unlike Milbradt, the doctor did not testify that he had determined that R.V. did not have a problem with lying behavior. Rather, as the PCR court concluded, Dr. Lukschu testified that a box on a form indicating lying behavior was checked by R.V.'s mother as "no."

At best, Dr. Lukschu's statement provided information from which the jury could make an inference of credibility. Under Oregon law, such inferential statements are admissible. State v. Remme, 173 Or.App. 546, 562, 23 P.3d 374 (2001)("The jury's function is not impinged upon when expert testimony does no more than provide jurors with useful, nonconclusive information from which *inferences* as to credibility *may* be drawn." (emphasis in original)); State v. Romero, 191 Or.App. 164, 81 P.3d 714 (2003), rev. denied, 337 Or. 248 (2004)(same); see also Middleton, 294 Or. at 438 (testimony about how a typical child victim of abuse behaves was admissible). Accordingly, because petitioner has not demonstrated that Dr. Lukschu's testimony was inadmissible, trial

counsel did not provide deficient performance in failing to object to it. Strickland, 466 U.S. at 690; Bosch, 914 F.2d at 1247.

Furthermore, even assuming *arguendo* that counsel's performance was deficient, petitioner has not demonstrated prejudice.[2] Petitioner argues that R.V.'s credibility was critical to the case, and that absent the improper vouching, he would have been acquitted. As will be discussed in greater depth below, R.V.'s credibility, and that of his mother, were called into question. Given that the doctor's statement was not a comment upon R.V.'s credibility and that R.V.'s credibility was impeached in any event, petitioner has not demonstrated a reasonable probability that the outcome would have been different had counsel objected to the doctor's statement. Strickland, 466 U.S. at 694. Thus, the PCR court's conclusion that the trial counsel did not provide ineffective assistance was not an unreasonable application of Strickland. 28 U.S.C. § 2254(d)(1).

**B.   Impeaching Testimony with Specific Instances of Conduct.**

In his second claim for habeas relief, petitioner contends that once Dr. Lukschu testified that R.V. did not have a problem with "lying behavior," the door was then open to impeach Dr.

---

[2] Petitioner's argument that he suffered prejudice by joinder of the case involving R.V. with the case involving R.J. is irrelevant to a discussion of trial counsel's failure to object to evidence.

14 - OPINION AND ORDER

Lukschu with specific instances of R.V. lying.³  According to petitioner, trial counsel was ineffective in failing to impeach Dr. Lukschu with that evidence.  Petitioner also argues that counsel was ineffective in failing to cross-examine the state's other character witnesses with those specific instances.

Respondent submits that the PCR court's decision on this point is entitled to deference because trial counsel did impeach R.V. and his mother with character witnesses and that trial counsel cannot be deemed ineffective because she attempted numerous times to introduce those specific instances of lying conduct, but the trial court's rulings prevented counsel from doing so.  Respondent is correct.

Again, petitioner has failed to present clear and convincing evidence to rebut the PCR court's factual finding that Dr. Lukschu's statement was that the mother checked the box. 28 U.S.C. §§ 2254(d)(2), (e)(1).  And, as discussed above, the PCR court concluded that Dr. Lukschu's comment was not "tantamount" to a comment on R.V.'s credibility.  See Remme, 173 Or. App. at 562.  Given that determination, the PCR court's conclusion that trial counsel did not render deficient performance by not cross-examining

---

³Petitioner asserts that the following examples could have been presented to Dr. Lukschu:  R.V. lied to a mediator, lied to children in the neighborhood to upset them, lied to police, and lied to animal control about his dogs. (Pet. Brief in Support (#19) p. 23.)

15 - OPINION AND ORDER

the doctor with specific instances of R.V.'s dishonest conduct is not an unreasonable application of Strickland.[4]

Additionally, petitioner's argument that competent counsel would have cross-examined witnesses with specific instances of conduct seemingly ignores counsel's multiple efforts to introduce the very evidence about which petitioner now complains.  In a pretrial conference, counsel argued that R.V. previously had made a false allegation of sex abuse, and had been kicked out of school, and that the evidence was relevant to R.V.'s character for untruthfulness and whether he was making a false accusation against petitioner.  (Tr. Vol. 1, p. 21-25.) With respect to the alleged false allegation of abuse, the trial court permitted counsel to cross-examine R.V. about the incident, but refused to permit extrinsic evidence to refute R.V.'s answer. (Tr. Vol. 1, p. 25-27.) The trial court ruled that counsel could not discuss the other specific instances of conduct, but rather could only discuss R.V.'s general reputation evidence.  (Id.)

---

[4] In the reply, petitioner suggests that cross-examination with specific instances of conduct would have been permitted under Oregon Evidentiary Code Rules 405(1) and 608(2).  However, petitioner's argument somewhat misses the mark.  To be sure, a trial court's evidentiary rulings are generally not proper grounds for habeas corpus relief.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Jammal v. Van de Kamp, 926 F.3d 918, 919 (9th Cir. 1991).  As respondent correctly notes, petitioner did not challenge the trial court's evidentiary rulings on appeal.

16 - OPINION AND ORDER

During the defense's case in chief, counsel again attempted to introduce the specific evidence concerning the alleged false accusation of abuse because R.V. had denied the charges on cross-examination, but the trial court refused. (Tr. Vol. 5, p. 1-4.) Also during the trial, counsel presented five witnesses who testified that R.V. and Tellez had reputations in the neighborhood as being dishonest. (Tr. Vol. 4, p. 9-10, 19-20, 26-28, 31-32, 38.) When witnesses Glenn Taylor and Barbara Hoffman attempted to mention a specific instances of conduct, the trial court sustained the prosecutor's objections. (Id. at 7-8, 21-22.) Additionally, following the defense's case in chief, counsel made a lengthy offer of proof detailing what specific instances of dishonest or deceptive conduct by R.V. the evidence would have shown. (Tr. Vol. 5, p. 42-49.)

In light of the trial court's evidentiary rulings, it is clear that any additional attempts by trial counsel to introduce specific instances of lying would have been futile. It is difficult to imagine under the circumstances what more counsel could have done to introduce that specific evidence. See Murray v. Schriro, 2008 WL 1701404, *36 (D. Az. 2008)(failure to impeach witness with a prior incident of perjury was not ineffective assistance where trial court ruled that co-defendant could not do so).

Additionally, counsel cross-examined the mother, who admitted that R.V. lied sometimes, and often did so while in fifth grade.

17 - OPINION AND ORDER

(Tr. Vol. II p. 66.) And, Tellez's reputation for truthfulness was called into question by the defense's character witnesses. In light of all the circumstances and the trial court's rulings, counsel's conduct clearly did not fall below an objective standard of reasonableness. Strickland, 466 U.S. at 688.

Moreover, petitioner has not demonstrated a reasonable probability that the outcome of the trial would have been different had Dr. Lukschu, R.V. and Tellez been impeached with the excluded evidence. In this case, the other victim, R.J. testified that he was sexually abused by petitioner in the same manner as R.V. There was testimony that R.V. and R.J. did not know each other. (Tr. Vol. 2, p. 106-07.) Clearly, the jury believed the two stranger's version of events.

Finally, perhaps reasonable minds might disagree as to whether trial counsel's performance was deficient or whether petitioner was prejudiced by the failure to impeach witnesses with specific instances of dishonest conduct. However, an erroneous decision by a state court alone is not enough to grant habeas relief. The state court's application of the Strickland test must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 65 (2003); Williams v. Taylor, 529 U.S. at 413 (the state court's application of Strickland must be more than merely incorrect-the court must have "unreasonably applied that principle to the facts of the prisoner's case.") Given the weight of the evidence against

petitioner presented in both cases, I conclude the PCR court's application of Strickland was not objectively unreasonable.

## CONCLUSION

Based on the foregoing, petitioner's petition for writ of habeas corpus (# 2) is DENIED, and this proceeding is DISMISSED, with prejudice.

Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED. See 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this  9th  day of MARCH, 2010.


                                          /s/ Garr M. King
                                          Garr M. King
                                          United States District Judge